# EXHIBIT A

# EXHIBIT A

F I L E D
Electronically
CV19-02232
2021-09-23 11:34:46 AM
Alicia L. Lerud
Clerk of the Court
Transaction # 8662281 : csulezic

**ACOMP**
**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ. (#6711)
3005 West Horizon Ridge Pkwy., Suite 241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
Email:  aml@lagomarsinolaw.com
*Attorney for Plaintiff Byron Green*

## IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA IN AND

## FOR THE COUNTY OF WASHOE

| | |
|---|---|
| BYRON GREEN, an individual, | CASE NO.: CV19-02232 |
| Plaintiff, | DEPT. NO: 4 |
| vs. | |
| WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the state of Nevada; and DOES 1-10; inclusive, | **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| Defendants. | |

## COMPLAINT

Plaintiff Byron Green (sometime referred to herein as "Green") hereby files a Complaint against the Defendants and alleges as follows:

1.      Green is an individual who was previously employed by Defendant Washoe County School District (sometimes referred to herein as the "District") as the Chief of the Office of Student Services (sometimes referred to herein as "OSS").  Green has lived in Nevada for over 20 years and lived in Washoe County during his employment with the District.  In his position at OSS, Green was an advocate for students with disabilities in the District. During his four-year tenure at OSS, Green helped increase the graduation rates of students with disabilities

2.      OSS is a department within the District that provides services to the special needs members of the Washoe County community and oversees the District's implementation of state and federal rules and regulations that govern special education. OSS also acted as a resource for District

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864    Facsimile (702) 383-0065

employees who interacted with the special needs members of the Washoe County community and

3.     The Washoe County School District ("the District) is a political subdivision of the State of Nevada created and existing under NRS 386.010 and may sue and be sued under NRS 386.010(3).

4.     Green is informed and believes and thereupon alleges that Kristen M. McNeill (sometimes referred to herein as "Kristen McNeill" or "McNeill") was employed by the District and was acting within the scope of her employment.

5.     DOES 1-10 are employees of the District or members of the Board of Directors of the District or others whose true names and capacities are not presently known to Green so they are named and sued fictitiously in this Complaint. Green will seek leave of Court to amend his Complaint to allege the true names and capacities of these Defendants when they become known. On information and belief, Green alleges that each of the fictitiously named defendants is responsible in some manner for the wrongful actions alleged in this Complaint and for the resulting injuries and damages to Green. DOES 1-10 are sued in both their individual and official capacities.

6.     Venue is proper in this Court under NRS 13.010, et seq., because the Defendants named in this dispute are located in Washoe County and the acts or omissions set forth in this Complaint occurred in Washoe County and any agreement that existed between Green and the District that resolved the District's claims that Green had received or relied upon leaked information during any investigation alleged to exist in this matter was executed within Washoe County.

7.     Green became the Chief of OSS in or about early 2015. Prior to that time, Green was an employee within the District. In his capacity at the District with OSS, Green was charged with implementing existing rules and regulations related to special education.

8.     In or about 2015, the State of Nevada Department of Education issued directives to the District regarding special education and expressed concerns with the services the District provided for students with disabilities and with the District's compliance with applicable rules and regulations, noting the District's recurrent violations of such rules and regulations.

9.     As a result of these expressed concerns, Traci Davis, the former superintendent of the District (sometimes referred to herein as "Superintendent Davis"), made it a priority to reform the

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

OSS and its practices, making it the mission of OSS to ensure, as much as possible, that the District complied with existing legal requirements for students with disabilities.

10.     With these directives received from Superintendent Davis, Green and his staff at OSS commenced a long and difficult process to reform the District and to change how the District interacted with and treated students with disabilities to ensure, as best as possible, that the District provided more consistent services that complied with applicable rules and regulations.

11.     This effort to reform the District was difficult. Green and others within OSS were the frequent object of false complaints leveled against them as a result of the reforms and other changes being implemented by his office at the direction of Superintendent Davis. Green complained that principals and others, who had concerns or issues with Green and/or his staff, did not direct those concerns through proper communication channels, but frequently directed their concerns to the Washoe School Principals Association (sometimes referred to herein as "WSPA") or to Paul LaMarca (sometimes referred to herein as "LaMarca"), a Chief at the District who had no supervisory role over Green or his staff at OSS.

12.     Many of the complaints raised against Green and/or his staff were initiated by WSPA because principals in the District, who were the primary decision makers in most if not all special needs matters, resisted the changes and reforms that Green sought to implement within the District.

13.     In most instances when a complaint was raised against Green and/or his staff, Green would respond to the complaint and seek to resolve stated issues. However, many if not most of the complaints were anonymous, did not state specifics about what was alleged to have occurred, were raised through inappropriate channels of communication, and failed to provide Green and/or his staff with any guidance about what changes were expected of Green and/or his staff. Despite the existence of some complaints, at no time did Superintendent Davis or McNeill instruct Green and/or his staff at OSS to stop or alter the changes and reforms that OSS was implementing. In fact, Superintendent Davis and McNeill were aware of all changes and reforms that were being made through OSS before Green and/or his staff attempted to implement the changes and reforms.

14.     Throughout this process of responding to anonymous and mostly unfounded complaints, Green began to track violations of rules and regulations that governed special needs

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864    Facsimile (702) 383-0065

within the District and included these instances in an email to his supervisor, Kristen McNeill. Green kept this information in a binder that he gave to the District through Solutions at Work (hereinafter referred to herein as "SAW") at an interview with representatives from SAW on or about April 25, 2017, as described in more detail below.

15.     Also, while responding to these anonymous and unfounded claims, Green specifically complained that he and Jenni Ricci (aka "Jenny Hunt" but referred to herein as "Jenny Ricci" and/or "Ricci"), a member of his staff within OSS, were being bullied by LaMarca and that LaMarca was rude and condescending to Jenny Ricci and that this behavior exhibited toward Jenny Ricci needed to stop. These complaints were made to McNeil, LaMarca and to Neil Rombardo ("Rombardo") in a meeting in approximately October of 2016.

16.     In or about February of 2017, McNeill informed Green that he and Jenny Ricci, who complained about LaMarca, were the subject of an investigation wherein others within the district complained that Green and Ricci were, in fact, bullying. McNeill informed Green that he would be interviewed about the allegations of bullying, that he would be provided with specific allegations of bullying, and that he would be allowed to respond to these allegations. The initiation of this investigation was noted to members of management at the District in a letter from McNeill from February of 2017 that was provided to Green and to Jenny Ricci.

17.     In early April of 2017, Green was informed by McNeill that he and Jenny Ricci would be placed on leave during the above-noted investigation into bullying. McNeill also informed Green that Rombardo, the District's legal counsel, would be leading the investigation into allegations that Green and Ricci were bullying others. Surprised by this turn of events, Green again requested specifics about the allegations of bullying, but none were provided.

18.     On or about April 20, 2017, Green was contacted by SAW by letter. In this letter, SAW informed Green that it had been retained by the District to investigate "allegations beginning on or about August, 2014 through the present time constitute (sic) bullying, intimidation, harassment and retaliation which has created and continues to foster a hostile work environment for employees working in [OSS] and other departments." In this letter, Green was "directed" to interview with SAW in a meeting to be held on April 25, 2017. SAW also claimed in this letter that "[a]t the

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

meeting, you will have the opportunity to respond to the allegations." Finally, SAW warned Green "if the allegations are substantiated, you may face disciplinary action. . ." which could include "dismissal" from his employment with the District, among other threatened discipline. SAW's letter directing Green to attend this meeting is attached hereto as Exhibit 1. Interestingly absent from this letter are any factual allegations of bullying, intimidation, harassment or retaliation.

19.     Green cooperated with SAW and attended the interview on April 25, 2017, worried that a failure to cooperate could lead to discipline. Prior to the interview, Green asked if he could tape record the interview. SAW did not allow Green to tape record the interview but SAW later prepared a transcript of the interview from the interviewer's notes, which Green was able to review and alter, if needed. Green also took contemporaneous notes of the questions and answers from the interview. During this interview, Green shared the "binder" of information with SAW that substantiated issues with LaMarca, issues with WSPA, and issues surrounding possible violations related to students with disabilities. During this interview, Green also shared his concerns regarding how he and Jenny Ricci were being treated by LaMarca. The binder was not provided to SAW to respond to any allegations levied against Green and/or Jenny Ricci because Green was not made aware of those allegations during this interview.

20.     During the interview, Green was not asked any questions about alleged bullying of which Green was specifically accused. He was also not provided with a list of allegations raised against him asserting any form of bullying. Instead, Green was asked about his sexual partner, about who he lives with, about who he vacations with, whether he owns a condominium with Traci Davis in Hawaii, how he spends his time on weekends, among other questions. Green asked how any of these questions related to allegations of bullying. Green also demanded a list of allegations raised against him related to bullying. None were provided during the interview.

21.     Green perceived that the interview with SAW had nothing to do with him or with bullying but that the interview was an attempt to gather information that potentially could be used against Traci Davis or others within the School District, including Green's domestic partner, David Lasic. Specifically, during the interview, Green was asked twice if he received any information from someone within the Superintendent's office, which would include David Lasic and others.

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

22.     During the interview, Green was also asked if he had talked to Jenny Ricci since they were put out on leave and he responded truthfully that they had, several times. Green also truthfully stated during the interview that he did not discuss the SAW investigation with Ricci because he was not aware of the specifics alleged as part of that investigation.

23.     During this time period, Green and Ricci did speak. Throughout the time that they were out on leave, Green and Ricci assisted each other and discussed the claims that they had raised against LaMarca and WSPA that were set forth in the binder that Green gave to SAW during his April 25, 2017 interview, which were issues that Green raised with McNeill and others in October of 2016. Because the District did not seem to be investigating these issues, Green and Ricci exchanged emails, texts, and documents that were done to collaborate and outline their own complaints that they had raised against LaMarca, WSPA, and others.

24.     In or about May of 2017, while still out on leave, Green was again directed by letter to participate in a follow up interview with SAW. Prior to attending this second interview, Green asked if specific allegations would be provided to him about bullying. Green was told that such allegations would be provided. Green also asked if he could tape record the second interview and SAW refused to allow Green to tape record the interview but provided another transcript of the interview to Green from the interviewer's notes. SAW, however, again warned Green that if he failed to cooperate with SAW, he might be disciplined and that he might lose his job.

25.     During the second interview, SAW again asked no questions about Green bullying. SAW again did not provide Green with any specific allegations of bullying. Again, the second interview with SAW appeared to have nothing to do with Green or with bullying but was again aimed at digging up information about Traci Davis and others. SAW also again asked Green with whom he had been discussing SAW's investigation and other issues.

26.     Green was concerned about this treatment from SAW during the first and second interviews and complained to McNeill, noting that he did not appreciate the questions being asked during the interviews, sharing with her some of the questions asked, noting that he wanted to know who he was bullying and when, that he was fed up with being on leave for no apparent reason with no end to the leave of absence in sight, and that he wanted an update on his complaints raised against

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

LaMarca. McNeill responded that Green was not at liberty to discuss the SAW interview with her or others and that his behavior in discussing the interviews with SAW could result in his discipline.

27. To Green's surprise, in early June of 2017, McNeill informed Green that he would be allowed to return to work. He would not be disciplined, but Jenny Ricci would remain out on leave. So Green returned to work, but the behavior exhibited toward Green while out on leave continued after he returned to work, with additional interviews and other concerns arising, as described below.

28. Green is informed and believes and thereupon alleges that SAW determined through its investigation that Jenny Ricci was not being honest during this investigation, that she was untruthful about her interactions with Green during this investigation, and that she likely received leaked information about the investigation. Green is also informed and believes and thereupon alleges that Jenny Ricci was, in part, terminated from her employment as a result of these findings. Specifically, Green is informed and believes and thereupon alleges that Lisa Daane informed the district of conversations that Jenny Ricci claimed to have had with Green during the SAW investigation and that Ms. Daane's testimony, in part, led to Jenny Ricci's termination from her employment. Even though SAW and the District were aware of these communications between Jenny Ricci and Green during the SAW investigation, Green was not disciplined as a result, but Jenny Ricci was fired, at least in part because of these issues. The investigation against Green was therefore closed, even though SAW and the District believed that Green had been untruthful with them during the SAW investigation, which is a conclusion that Green disputes.

29. In an effort to make his return to work as smooth as possible, Green reached out to McNeill and Dawn Huckaby, the District's HR director, in correspondence dated June 7, 2017 that he wanted to determine what was being done to address his complaints that he and others in OSS were being bullied by LaMarca, WSPA and others.

30. On June 8, 2017, Rombardo corresponded with Green by email in response to his June 7, 2017 letter, claiming that the District had not immediately received a copy of the "binder" of information Green had provided to SAW after the April 25, 2017 interview and that Rombardo had recently received and reviewed the information. Rombardo also challenged Green's claim that Green raised a complaint against LaMarca in October of 2016 or during his interview with SAW on April

25, 2017, and informed Green that the District only recognized written formal complaints. Despite this apparent requirement to submit complaints in writing, Rombardo "accepted" Green's June 7, 2017 letter to McNeill and Huckaby as a complaint, even though the District, through McNeill and SAW, was aware of Green's complaints against LaMarca for several months.

31.     At or about this time, because of how poorly he was being treated by multiple factions of the District, Green retained Moore Law Group, PC, to seek to gather information about the District's behavior exhibited toward Green through public records requests made to the district in accordance with NRS 239.[1] On or about June 16, 2017, Moore Law Group drafted a letter to Neil Rombardo requesting specific information related to the SAW investigation and seeking the disclosure of public emails to and from certain named employees of the District. Moore Law Group did not identify Green as its client in this June 2017 correspondence. A true and correct copy of this correspondence is attached hereto as Exhibit 2.

32.     Green was suspicious that McNeill and others within the District, including LaMarca and Rombardo, were seeking to use Green and his relationship with David Lasic, who was the Chief of Staff for the District, to make a case to fire Traci Davis or to otherwise discipline her. During this time frame, no one told Green that he or David Lasic were the subject of an investigation into possible "nepotism." This assertion that Green was being investigated by SAW for "nepotism" is significant because this claim did not arise until several months later, as outlined in more detail below. At this point, Green had been told by the District that he and his staff were only being investigated for bullying, though no allegations that Green had bullied others had yet been presented and even though Green had been interviewed twice by SAW and they did not ask him any questions about his alleged bullying.

33.     As a result of the poor treatment he received, Green also filed a formal complaint with the Nevada Equal Rights Commission in the summer of 2017.

34.     On June 23, 2017, the District's office of general counsel responded to Moore Law

---

[1] By disclosing the retention of Moore Law Group, Green does not intend to waive any attorney-client privilege. The disclosure of this retainer serves to demonstrate the serious concerns Green had with how he was being treated, why he was on leave without any explanation (at this point for over six weeks), and that it appeared that McNeill and others, including possibly Neil Rombardo, were actively working to gather information about Traci Davis.

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

Group's initial public records request. This response did not assert that the District would be required to incur a large copying expense or that the District would expend a large amount of extraordinary staff time responding to the request. As a result, the District did not claim in this initial correspondence to Moore Law Group that it would charge anything to respond to the request. However, the District claimed that it was inundated with similar requests and that the District would not be able to respond to the request until September 22, 2017. A true and correct copy of this correspondence is attached hereto as Exhibit 3.

35.     Thereafter, in early July of 2017, Dustin Grate (hereinafter sometimes referred to as "Grate") of Grate Detections contacted Green and informed him that he had been retained by an outside attorney, Anthony Hall, who was investigating complaints raised by Jenny Ricci against the District. Grate requested an interview with Green. At this time, Green agreed to interview with Grate. Grate also agreed that Green could tape record the interview and Grate informed Green that he would also tape record the interview.

36.     On or about July 26, 2017, Green interviewed with Grate. The interview took place at the District's main office. Both Grate and Green tape recorded the interview. During the interview, Grate indicated that he was hired to investigate issues related to Jenny Ricci. Green believes and upon that basis alleges that Ms. Ricci had filed a complaint against the District with the Nevada Equal Rights Commission ("NERC"), which initiated Grate's investigation.

37.     During this interview, Grate asked some questions about Jenny Ricci's complaints but many of the questions appeared to be related to information that Green discussed during the SAW investigation, including questions about the issues raised in the binder that Green supplied to SAW during his April 25, 2017 interview with SAW, including specific issues related to WSPA and then communication plan at the district, and other issues.

38.     Because the interview with Grate continued to review issues raised by Green during the SAW investigation, Green was concerned because he perceived that no matter what he said or did, the District was focusing on the SAW investigation that had nothing to do with bullying and that appeared to be geared toward gathering information against him, Jenny Ricci, and Traci Davis. Even though Green had returned to work, he remained concerned for his job.

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864    Facsimile (702) 383-0065

39.     In or about August of 2017, McNeill asked Green to be involved in another interview, this time with McNeill and Dawn Huckaby, the District's director of Human Resources. This interview was more of the same. No allegations of specific acts of bullying were shared with Green. At this point, Green believed that the District was attempting to find any reason to fire him and that his time with the District was short. He also believed that Jenny Ricci would be fired for no valid reason, at least not for any reason that was ever shared with Green.

40.     On September 22, 2017, in response to Moore Law Group's June 16, 2017 public records request, the District through its office of general counsel claimed that it would not be able to respond to the request by September 22, 2017, but that the District would do all within its power to respond to the request by no later than December 29, 2017. A true and correct copy of this correspondence is attached hereto as Exhibit 4. In this letter, the District did not claim that it would charge Moore Law Group to respond to its June 2017 public records request.

41.     Moore Law Group responded to this correspondence on October 20, 2017, disputing the reasons why the District could not respond to its request prior to December 29, 2017, but ultimately expressing that Moore Law Group would await the response until it was received.

42.     On or about September 28, 2017, McNeill sent correspondence to WSPA, sharing with WSPA the results of the SAW investigation and the cost of the investigation (which exceeded $48,000.00 and which Green believes may have exceeded $100,000.00), indicating that discipline had been levied against Green, as recommended to Superintendent Davis by McNeill, which was untrue. This false information shared with WSPA made its way to the Reno Gazette-Journal, which published an article on November 2, 2017, that stated that the District had administratively disciplined Green, which was untrue.

43.     As a result of this false information provided to WSPA, which appeared to be retaliatory in nature against Green, Green amended his NERC complaint to include this act of retaliation in November of 2017.

44.     On November 15, 2017, the District's office of general counsel formally responded to Moore Law Group's June 16, 2017 public records request, refusing to provide any responsive documents, claiming various "privileges" for the first time without providing a privilege log, and

claiming that it would cost the district $35,016.50 of copying costs and extraordinary staff time to respond to Moore Law Group's June 16, 2017 public records request. Exhibit 5. The District asserted this claim even though in previous correspondence, the District did not claim that it would cost anything to respond to the June 16, 2017 public records request and even though the District, at that time, did not have a policy that complied with NRS 239 that would allow the District to charge the public for copying costs to respond to such requests.

45.     Without waiving any attorney-client privilege, Moore Law Group shared the November 15, 2017 correspondence with Green. Green then shared the correspondence with David Lasic. Mr. Lasic informed Green that, not one week earlier, he received an email dated November 9, 2017, that was shared between the District's office of general counsel and the District's information technology staff where the office of general counsel stated that the District would not charge Moore Law Group, or others, for their records requests, because the District did not have a policy that allowed them to do so. This email also outlined other reasons why the District would not charge for copying or for staff time, which were correct statements of Nevada law related to public records requests. The string of emails related to this issue is attached hereto as Exhibit 6. Rombardo and Breanne Read, a staff member of the office of general counsel, are copied on this email.

46.     The November 9, 2017 email demonstrates that Rombardo was being dishonest with opposing counsel in his November 15, 2017 correspondence, was fabricating the District's ability to charge for copying, and used the District's expressed ability to charge $35,016.50 for copying: (1) to squash Green's effort to obtain documents related to SAW's investigation because of the exorbitant cost; (2) to stymie Green's effort to address and correct the behavior exhibited toward Green by the District during the SAW investigation; and (3) to prevent Green from vindicating the false assertions made to WSPA about Green having been disciplined by the District.

47.     Concerned with what appeared to be a lie perpetrated by the District through Neil Rombardo, Green shared the November 9, 2017 email with Moore Law Group.

48.     Moore Law Group, however, did not want to use the email and sought, instead, to obtain the email through appropriate public records requests.

49.     As a result, on November 22, 2017, and because Moore Law Group knew of the

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864    Facsimile (702) 383-0065

existence of the November 9, 2017 email, Moore Law Group submitted another public records request to the District's office of general counsel and requested "any documents, including but not limited to emails sent to or received by Breanne Read and/or Neil Rombardo, that are dated from June 23, 2017 to the present, that discuss the District's policy or procedure for charging the public for open records requests pursuant to an established policy or that discuss the District's policy or procedure to charge the public when the open records request might involve the 'extraordinary use' of District personnel or technological resources." A true and correct copy of this correspondence is attached hereto as Exhibit 7. Moore Law Group used the specific language in this public records request because it was language contained in the November 9, 2017 email.

50.     On December 4, 2017, the District office of general counsel, through Breanne Read, responded that the District would respond to Moore Law Group's November 22, 2017 public records request by no later than December 8, 2017. This correspondence is attached hereto as Exhibit 8.

51.     On December 5, 2017, Moore Law Group informed NERC that it represented Green in his NERC complaint and that Moore Law Group would participate in the upcoming settlement conference between Green and the District related to the NERC complaint.

52.     On December 8, 2017, the District through its office of general counsel responded to Moore Law Group's November 22, 2017 public records request, claiming that the District had no documents responsive to the request, which was untrue. The District also claimed various privileges but did not provide a privilege log that would allow Moore Law Group to challenge the claim of privilege. A privilege log likely would have disclosed the November 9, 2017 email.

53.     As all of this was taking place, Green was again asked to be involved in another interview with Grate. Green agreed to participate in this interview, which took place on December 6, 2017 at the District's main offices. In this interview, Green was asked questions about his complaint regarding LaMarca but he was also asked questions again that related to items reviewed during the SAW investigation and that related to why Byron was out on leave and then investigated by SAW.

54.     Soon after this interview with Grate, Grate asked Green to participate in a third interview. This time, Green refused to be interviewed unless his attorney, John Moore, could be present during the interview. Grate agreed to allow John Moore to be present. This third interview

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

took place on or about December 21, 2017, with John Moore present. Of note, this interview also took place at the District's main office in Reno, Nevada, and John Moore checked in for this interview at the front desk, notifying District staff that he represented Green.

55.     Around this same time, Moore Law Group filed a Writ of Mandate with the Second Judicial District Court seeking to obtain from the district the production of documents responsive to Moore Law Group's public records requests without charge.

56.     The Court hearing the Writ of Mandate ordered the parties almost immediately to appear before the Court and the discovery commissioner, Wesley Ayres, in chambers on January 9, 2018. John Moore attended this in-chambers meeting. Rombardo attended the meeting on behalf of the District.

57.     During this meeting, Rombardo asserted that he would provide a reasonable estimate of the actual costs it would take to respond to Moore Law Group's public records requests. Moore Law Group agreed to review the reasonable estimate and, if the estimate was in fact reasonable, Moore Law Group agreed that it would pay the estimate, even though Moore Law Group did not believe that the District could charge for the copies. If the parties could not agree on paying for copies, then a hearing before Wesley Ayres would take place on January 19, 2018.

58.     On January 16, 2018, Neil Rombardo on behalf of the District sent an estimate to Moore Law Group wherein the District estimated that the District would reasonably expend nearly $270,000.00 (almost eight times greater the original estimate of $35,016.50 provided on November 15, 2017) in actual time to respond to Moore Law Group's records requests. That would be the equivalent of years of attorney and paralegal time, which was a false estimate. The estimate provided by the District is attached hereto as Exhibit 9.

59.     At this point, Moore Law Group realized that the District would not produce the documents requested, that they would not act in accordance with their own stated inability to charge for copies as expressed in the November 9, 2017 email, and that the charade had to end. As a result, on January 18, 2018, Moore Law Group corresponded with the District through Rombardo, rejecting the January 16, 2018 estimate, and sharing with Rombardo the November 9, 2017 email that Rombardo had heretofore refused to produce, despite Moore Law Group's November 22, 2017

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

public records request. This correspondence is attached hereto as Exhibit 10.

60.     The following day, on January 19, 2018, the parties conducted a hearing with Wesley Ayres, where the District complained that Moore Law Group had obtained leaked information regarding this dispute, as shown in the January 18, 2018 letter. The District ignored the fact that the leaked information demonstrated that Rombardo was lying to the Court and to opposing counsel about the District's ability to charge Moore Law Group for copies.

61.     Thereafter, on January 25, 2018, Grate asked for a fourth interview with Green. John Moore attended this interview at the District's main office. During this interview, Grate asked some follow up questions about how Green received information that appeared to be confidential and asked him about speaking with Jenny Ricci during this entire ordeal.

62.     Over the course of the next several weeks in the Writ of Mandate litigation, MooreLaw Group and the District, through the office of general counsel, exchanged multiple letters where the District again claimed a right to charge for copies and again provided astronomical estimates to produce such copies. In this exchange, the District eventually acknowledged that it had charged no other requester for copies at any time prior to attempting to charge Moore Law Group, making Moore Law Group the first and only requester the District had ever attempted to charge to respond to a public records request under existing District policy at the time.

63.     On February 6, 2018, this case turned drastically. On this date, Green and John Moore participated in a telephonic settlement conference with the District related to Green's NERC complaint. The District was represented at the conference by Anthony Hall and McNeill. During this conference, Green expressed his position regarding his treatment, how he was being harassed, how the harassment continued after he had returned to work, how the District retaliated against him by claiming to WSPA that Green had been disciplined, which was not true, how he was still being interviewed by Grate about issues discussed during the SAW investigation, and that he would resolve his NERC complaint with the District for $200,000.00.[2]

64.     After Green expressed his position, attorney Anthony Hall spoke. Mr. Hall was the

---

[2]     Plaintiff does not offer any of the statements or conduct that occurred in the settlement conference to prove or disprove liability or to prove or disprove damages. This evidence, instead, will be offered to demonstrate the contours of the settlement agreement that eventually resulted from this settlement conference.

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

only District representative that spoke during this settlement conference. Instead of addressing Green's legitimate complaints, Mr. Hall began his comments by stating that the District knew that Green was receiving leaked information from someone within the District, that Mr. Hall was being asked to investigate these leaks by the District, that he would investigate the leaks to the fullest extent, that the District would find out with whom Mr. Green had shared or from whom he had gained what appeared to be confidential information, and that the leak investigation would likely lead to the employment discipline of Green and anyone else who was found to have shared leaked information with Green or others, a threat leveled at Green and impliedly toward David Lasic.

65.     Despite this clear threat of retaliation against Green, which had nothing to do with Green's NERC complaint and was wholly outside the bounds of communications that served to attempt to resolve a legitimate dispute, Mr. Hall offered a compromise position. To wit, if Green would dismiss his NERC complaint AND the Writ of Mandate litigation that sought the production of documents from the District, Mr. Hall would walk away from the leaked information investigation, Green and others would not be disciplined as a result of receiving or sharing leaked information, and the District and Green could return to the business of teaching children.

66.     Shocked by this threat of retaliation if Green did not dismiss an ongoing Title VII investigation and the Writ of Mandate litigation, John Moore ended the telephonic settlement conference, expressed that Mr. Hall's threats were retaliatory, and hung up.

67.     The threats, however, hit their mark. After this meeting, Green was extremely concerned for his own job and for his domestic partner, David Lasic's job. As a result of these threats, Green ultimately decided that it was best for him to drop his NERC complaint and the Writ of Mandate litigation, though he had legitimate claims and though the District had made a retaliatory threat if Green did not dismiss the NERC complaint, and that it was best for Green to agree to settle with the District, in exchange for an ending of the leaked information investigation.

68.     Accordingly, John Moore contacted Anthony Hall to commence settlement discussions. In these discussions, that took place over several phone calls and through various emails, Mr. Moore expressed that Green was upset by how he was treated, that most of the questions asked of him during this 9-month ordeal did not relate to any claim of bullying, and that he was tired

and done. During these discussions, Mr. Hall expressed for the first time that Green was actually the subject of two investigations, a "nepotism" complaint and a bullying complaint. As noted above, no one ever told Green that he was the subject of a "nepotism" complaint and Green was never given any allegations of bullying to which he could respond. Mr. Hall also claimed during these discussions that he wanted the settlement with Green to be as broad as possible to include all potential claims that could arise against Green, that Mr. Hall had a "fiduciary duty" to report the allegedly leaked information to the School Board, but that Mr. Hall would forego the investigation of the leaked information and this apparent "fiduciary duty" and close that investigation, without any discipline, if Green would agree to dismiss his NERC complaint and his Writ of Mandate litigation.

69.     Green now believes, based upon these statements made by Mr. Hall during settlement efforts, and because Green has now been fired by the District for allegedly leaking information to Jenny Ricci and others, that the School Board was never informed of the potential leaked information investigation or the settlement that Green ultimately reached related to that investigation. Green also believes and based upon that belief alleges that Superintendent Davis was never informed of the potential leaked information investigation or Green's settlement.

70.     After going back and forth on the settlement agreement for several weeks, Green ultimately signed a settlement agreement with the District on March 5, 2018. Kristen McNeill signed the agreement on behalf of the District. A true and correct copy of the signed settlement agreement is attached hereto as Exhibit 11.

71.     Under this agreement, the District agreed that it "will close all current and currently contemplated investigations by [the District's] legal counsel, whether that counsel is a member of [the District's] Office of General Counsel or is outside counsel that has been investigating any claims concerning Dr. Green, and will not subject Dr. Green to any discipline as a result of any such current and currently contemplated investigations." For purposes of clarity, the District also outlined the following instances that could have led to discipline against Green for which Green would be released, if he dismissed his NERC complaint and the Writ of Mandate litigation: "(a) the source of information Dr. Green had concerning a personnel matter between Dr. McNeill and her assistant; (b) communications concerning the conclusions of the Solutions at Work investigation to Dr. Green

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

before it was final; (c) communications with Ms. Ricci about the issues and facts being investigated by Dustin Grate; and (d) documents used by Dr. Green in support of his public records request." Finally, the release stated that the District may investigate or take action "regarding current or future litigation or allegations by any other current or former employee. However, to the extent such investigations overlap with the current investigation matters or any currently contemplated investigations, no disciplinary action will be taken against Dr. Green for any facts or information learned that are within the scope of the current and/or currently contemplated investigations." Exhibit 11 (emphasis added). The agreement also did not release claims that were "not currently known or contemplated by [the District's] legal counsel concerning Dr. Green. . .," thereby releasing Green from any known claims that concerned Dr. Green. Id. Finally, "as additional consideration . . . Kristen McNeill will draft and sign the letter for Dr. Green described further below." Id. This letter that McNeill drafted and signed under the release is attached hereto as Exhibit 12 and outlines how Green was not disciplined as a result of the SAW investigation, which was closed at the time that Green signed the release.

72.     During "future litigation" with Jenny Ricci that overlaps with the Solutions at Work investigation and investigation matters that were reviewed by Dustin Grate and other known issues for which Green obtained a release, the District learned through discovery that Green communicate with Jenny Ricci by text and other means at or about the time of the Dustin Grate interviews and at the start of the Solutions at Work investigation about issues raised in those investigations, and other issues that overlap with the scope of current and/or currently contemplated investigations into Green's alleged misconduct, including but not limited to claims of leaking information to Ricci. As noted in media reports related to this discovery, the District fired Superintendent Davis, claiming without any evidence that she was the source of leaked information to Green and/or others.

73.     After the District learned of this information, Green believes and based upon such belief alleges that McNeill and others set out to fire Green and David Lasic as a result of the information provided to Jenny Ricci in an effort to conceal McNeill's involvement in the leaked information investigation, for which Green had reached a settlement with the District. Green also believes and based upon that belief alleges that Superintendent Davis knew nothing about the

settlement that Green had reached with the District.

74.     As a result, Green believes and based upon that belief alleges that McNeill and others set out to convince Superintendent Davis to take a leave of absence after the District accused her of wrongdoing for allegedly leaking information to Green and David Lasic. McNeill and others sought to convince Superintendent Davis to take this leave of absence so that McNeill, after she was appointed Acting Superintendent during Superintendent Davis's leave, could immediately fire Green and David Lasic. In fact, the first action that McNeill took as Acting Superintendent after Superintendent Davis took a leave of absence was to fire Green and David Lasic.

75.     In Green's termination letter, McNeill makes it clear that Green was terminated for his conduct in April of 2017 (when he was placed out on leave during the SAW investigation) through June of 2019. To be clear, McNeill states that Green was terminated because there exist "substantial evidence, including staff reports and clear and direct text message and emails that you sent to a former [District] employee, who was in active litigation against the [District]. In these communications, you admit that after the Spring 2017 [District] investigation into your conduct concluded, and/or after you were reinstated as Chief Student Services Officer, that you intentionally engaged in unprofessional conduct by engaging in harassment, intimidation, and retaliation against [District] employees who made good faith complaints against you [all of which were closed without any discipline against Green] or to those who assisted in investigating those complaints." McNeill goes on to claim that Green was terminated because he used his "resources and access as a Chief to reveal confidential [District] information to a person who had filed a federal lawsuit against the [District]. . ." This letter is attached hereto as Exhibit 13. Yet, none of the discovery in the Jenny Ricci lawsuit demonstrates that Green provided any confidential information to Jenny Ricci other than documents or items that Jenny Ricci already had in her possession because she was also provided with the allegedly confidential information by McNeill.

76.     All this alleged misconduct was the subject of Green's release signed in or about March of 2018. The District was fully aware before Green signed the release that he had communicated with Jenny Ricci about the investigations raised against him and Ricci and that he had likely received and disclosed confidential information to Ms. Ricci and to others. The District

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

made this clear when it threatened to investigate these claims if Green would not agree to dismiss his NERC complaint and his Writ of Mandate litigation and that Green's employment would be at risk depending on what was learned in the investigation. Accordingly, by firing Green for the things he had already resolved with the District, for which the District agreed Green would not be disciplined, the District materially breached its contract with Green when the District fired him on June 17, 2019.

77.    Green has since filed another NERC complaint, alleging that he has been the subject of retaliation in the form of job termination for assisting a former co-worker who had asserted a claim against the District under Title VII. On June 30, 2021, Green received a letter from NERC informing him that the case is closed. *See* Exhibit 14. The letter constituted a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC).

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

78.    Green realleges each and every allegation stated above as though stated here.

79.    The District was fully aware that Green had received information that might be confidential related to various investigations with SAW, Dustin Grate, and others. As a result of these investigations and the possibility that Green was receiving and sharing information with Jenny Ricci and others, the District used its knowledge of Green's possible receipt and sharing of that information to threaten Green with the termination of his employment if Green did not terminate his NERC complaint and the Writ of Mandate litigation.

80.    Understanding the threats made to him during the NERC settlement conference noted above, Green decided that it was best for him and his future employment with the District to enter into a settlement agreement and release with the District.

81.    Green and the District entered into a binding and enforceable settlement agreement and release in or about March of 2018 wherein Green agreed to dismiss his NERC complaint and Writ of Mandate litigation against the District in exchange for a broad release related to the investigations that were then ongoing and then contemplated against Green and that released all claims of which the District was aware at the time of the release, which would include any investigation into the possible leaking of information to Jenny Ricci and/or others.

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

82.     Despite being released from any such claims and despite the District's agreement that Green would not be disciplined in his employment for any issues related to or arising from such claims, the District breached its settlement agreement and release with Green when it fired Green in or about June of 2019 for the stated reasons that he had been the source or that he was the alleged source of leaked information to Jenny Ricci and/or others.

83.     The District materially breached the settlement agreement and release with Green when it fired Green in June of 2019.

84.     Green has suffered damages in excess of $15,000.00 as a proximate and foreseeable result of the District's breach of contract in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

85.     Green realleges each and every allegation stated above as though stated here.

86.     There is implied in every contract a covenant of good faith and fair dealing which provides that neither party will commit any act or omission in the performance of a contract that deprives the other party of the benefits reasonably to be expected under the contract.

87.     By virtue of the acts and omissions set forth above, the District breached the covenant of good faith and fair dealing implied in the settlement agreement and release the District and Green entered into in May of 2018, which breach proximately and foreseeably caused and resulted in injury and damage to Green in an amount in excess of $15,000.00 in an amount to be proved at trial.

**THIRD CLAIM OF RELIEF**

**(Retaliation Under Title VII Against WCSD)**

88.     Green realleges each and every allegation stated above as though stated here.

89.     The above said acts of the District constitute retaliation in violation of public policy and in violation of 42 U.S.C. § 2000e-3.

90.     Title VII prohibits discrimination against an employee "because he has made a charge [...], assisted, or participated in any manner in an investigation [or] proceeding [...] under this subchapter." 42 U.S.C. § 2000e-3.

91.     Green was: (1) engaged in a protected activity; (2) the District subjected Green to

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

adverse employment actions; and (3) a causal link exists between the protected activity and the adverse action.

92.     Green engaged in a protected activity when he assisted a former employee to assert a claim of unlawful employment practice against the District. The former employee alleged that the District engaged in unlawful employment practice by engaging in discriminatory actions based on her gender. Green engaged in protected activity by assisting in the investigation of what he reasonably and in good faith believed to be unlawful employment practice.

93.     The District subsequently engaged in adverse employment actions by terminating Green. A causal link exists between the protected activity and the discharge.

94.     A reasonable employee would have found the District's actions materially adverse in that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

95.     The District, unlawfully and intentionally retaliated against Green by terminating his employment, in violation of Title VII.

96.     As a direct and proximate result of Defendants' conduct, Green was damaged, have suffered, and continue to suffer damages in the form of: past and future lost earnings, past and future pain and suffering, and other associated losses in an amount in excess of $75,000.00.

97.     The conduct of the District, by and through its employees, was willful, fraudulent, intentional, oppressive, malicious and done with a wanton and reckless disregard for the rights of Green, thereby warranting the imposition of punitive damages in excess of $75,000.

98.     By reason of the retaliation suffered, Green is entitled to all legal and equitable remedies available under Title VII.

### FOURTH CLAIM OF RELIEF

### (Retaliation Under NRS 613.340 Against WCSD)

99.     Green realleges each and every allegation stated above as though stated here.

100.    The above said acts of the District constitute discrimination for opposing unlawful practice or assisting investigation.

101.    NRS 613.340 prohibits discrimination against an employee because he "assisted or

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864    Facsimile (702) 383-0065

participated in any manner in an investigation [or] proceeding [...]" under NRS 613.310 to 613.4383, inclusive.

102.     Green was: (1) engaged in a protected activity; (2) the District subjected Green to adverse employment actions; and (3) a causal link exists between the protected activity and the adverse action.

103.     Green engaged in a protected activity when he assisted a former employee to assert a claim of unlawful employment practice against the District. The former employee alleged that the District engaged in unlawful employment practice by engaging in discriminatory actions based on her gender. Green engaged in protected activity by assisting in the investigation of what he reasonably and in good faith believed to be unlawful employment practice

104.     The District subsequently engaged in adverse employment actions by terminating Green. A causal link exists between the protected activity and the discharge.

105.     A reasonable employee would have found the District and its employee's actions materially adverse in that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

106.     The District, unlawfully and intentionally retaliated against Green by terminating his employment, in violation of NRS 613.340.

107.     As a direct and proximate result of District's conduct, Green was damaged, have suffered, and continue to suffer damages in the form of: past and future lost earnings, past and future pain and suffering, and other associated losses in an amount in excess of $75,000.00.

108.     The conduct of the District, by and through its employees, was willful, fraudulent, intentional, oppressive, malicious and done with a wanton and reckless disregard for the rights of Green, thereby warranting the imposition of punitive damages in excess of $75,000.

109.     By reason of the retaliation suffered, Green is entitled to all legal and equitable remedies available under NRS 613.340.

WHEREFORE, Plaintiff prays for relief as follows:

1.     That the Court award Green damages in an amount in excess of $15,000.00, subject to proof in trial;

LAGOMARSINO LAW

3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864    Facsimile (702) 383-0065

LAGOMARSINO LAW
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065

2.      That the Court award exemplary and punitive damage in favor of Green against Defendants McNeill and Does 1-10 in an amount sufficient to punish the Defendants and to set an example to deter further such conduct;

3.      For costs, interest, and attorney's fees, permitted by contract or by statute or as damages arising from the Defendants' misconduct;

4.      For such other relief as the Court deems proper.

DATED this 23rd day of September 2021

RESPECTFULLY SUBMITTED,



**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ. (#6711)
3005 West Horizon Ridge Pkwy., Suite 241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
Email:  aml@lagomarsinolaw.com
*Attorney for Plaintiff Byron Green*

SECOND JUDICIAL DISTRICT COURT
COUNTY OF WASHOE, STATE OF NEVADA

**AFFIRMATION**
**Pursuant to NRS 239B.030 and 603A.040**

The undersigned does hereby affirm that the preceding document, (*title of document*)

PLAINTIFF'S FIRST AMENDED COMPLAINT

file in case number: CV19-02232

(☒ *mark one*)

☒  Document does not contain the personal information of any person.

☐  Document contains the social security number of a person as required by: (☒ *mark one*)

      ☐  A specific state or federal law, to wit: (*write the specific state or federal law*)

      ☐  For the administration of a public program

      ☐  For the administration for a federal or state grant

      ☐  Confidential Family Court Information Sheet (NRS 125.130, NRS 125.230, and NRS 125B.055)

DATED this (*day*) 23 day of (*month*) September , 2021 .

Submitted By: (*Your signature*) /s/ Andre M. Lagomarsino

      (P*rint your name*) Andre M. Lagomarsino

      (*Attorney for*) Byron Green

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I hereby certify that on this 23rd day of September 2021, I served a true and correct copy of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** on all parties to this action by electronic service, via the Clerk of the Court by using the ECF system which served the following parties electronically:

ANTHONY L. HALL, ESQ.
AHall@SHJNevada.com
SANDRA KETNER, ESQ.
SKetner@SHJNevada.com
SIMONS HALL JOHNSTON PC
6490 S. McCarran Blvd., Suite F-46
Reno, Nevada 89509
*Attorneys for Defendant*

_____
An Employee of **LAGOMARSINO LAW**

**LAGOMARSINO LAW**
3005 West Horizon Ridge Parkway, Suite 241, Henderson, Nevada 89052
Telephone (702) 383-2864   Facsimile (702) 383-0065